**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. PEIRCE DIVISION**

**LINDSEY NEWELL,**

    *Plaintiff,*

    v.

**THE LAW OFFICES OF TRAVIS R. WALKER, P.A., FLORIDA LEGAL COLLECTIONS, P.A., and TRAVIS R. WALKER, ESQ.**

    *Defendant.*

CASE NO: 2:25-cv-14017

**JURY TRIAL DEMANDED**

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, Lindsey Newell ("Mrs. Newell"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, The Law Offices of Travis R. Walker, P.A. ("TRW"), Florida Legal Collections, P.A., ("FLC"), and Travis R. Walker, Esq. ("Mr. Walker") stating as follows:

## PRELIMINARY STATEMENT

1.    This is an action against all Defendants for violations of the Florida Consumer Collection Practices Act, § 559.55, et seq., Fla. Stat. ("FCCPA"), and additional claims against FLC and Mr. Walker for violations of Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq., ("FDCPA").

## JURISDICTION AND VENUE

1.    Jurisdiction arises under the FDCPA, 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1331, as the FDCPA is a federal statute.

2. Supplemental jurisdiction arises under 28 U.S.C. § 1367 for the FCCPA claims herein.

3. Defendants are subject to the provisions of the FDCPA and the FCCPA, and are subject to the jurisdiction of this Court § 48.193(1)(a)(1), Fla. Stat., and Fed. R. Civ. P. 4(k).

4. Venue is proper in the Southern District of Florida because the acts complained of were committed and/or caused by the Defendant within Martin County, Florida and St. Lucie, County, Florida.

## PARTIES

5. Mrs. Newell is a natural person residing in the city of  Port St. Lucie, Florida.

6. The Plaintiff is a consumer as defined by the FDCPA, 15 U.S.C. § 1692a(3) and FCCPA § 559.55(8), Fla. Stat., respectively.

7. TRW is a Florida profit corporation located at 1100 SE Federal Highway, Stuart, FL 34994.

8. TRW has a listed registered agent of Travis R. Walker, Esq., 1100 SE Federal Highway, Stuart, FL 34994.

9. TRW is a law firm.

10. TRW's founding attorney is Mr. Walker, an active member of the Florida Bar at all times relevant.

11. Mr. Walker may be served at his place of business 1100 SE Federal Highway, Stuart, FL 34994.

12. Mr. Walker, as the founder and managing attorney, is ultimately responsible for the activities and conduct of TRW.

13. Mr. Walker is responsible for setting the policies and procedures of TRW, in addition to ensuring those policies and procedures are adhered to.

14. Mr. Walker is responsible for ensuring compliance of TRW with all applicable laws and regulations.

15. Mr. Walker is responsible for overseeing and managing all employees of TRW, and is responsible for all hiring and firing decisions.

16. FLC is a Florida profit corporation located at 1100 SE Federal Highway, Suite B, Stuart, FL 34994.

17. FLC is also owned by Mr. Walker, who is registered as its President and sole officer.

18. FLC also has a listed registered agent of Travis R. Walker, Esq., 1100 SE Federal Highway, Stuart, FL 34994.

19. As FLC's president and sole owner, Mr. Walker is responsible for setting the policies and procedures of TRW, in addition to ensuring those policies and procedures are adhered to.

20. Mr. Walker is responsible for the day-to-day operations of FLC.

21. Mr. Walker is responsible for reviewing any and all regulations affecting FLC, or alternatively, is responsible for hiring and firing personal to ensure the company he manages is in compliance with those regulations.

22. Mr. Walker has the ability to review any and all collection communications made by both TRW and FLC.

23. Mr. Walker has the ability and responsibility to respond to any complaints regarding the conduct of FLC.

24.     Courts have routinely held that individual employees, managers, partners, and owners of companies can be held personally liable for improper debt collection activities. *See Pennsylvania v. Think Fin., Inc.*, CIVIL ACTION No. 14-cv-7139, at *57 (E.D. Pa. Jan. 14, 2016); *Fed. Trade Comm'n v. Primary Grp., Inc.*, No. 16-13532 (11th Cir. Sep. 29, 2017); *Cruz v. Int'l Collection Corp.*, 673 F.3d 991 (9th Cir. 2012); *Beckworth v. Law Office of Thomas Landis, LLC*, CIVIL ACTION No. 11-7277, at *16-17 (E.D. Pa. Apr. 18, 2012); *Smyth v. Merchants Credit Corp.*, No. 2:11–cv–01879 RSL, 2012 WL 588744, at *3 (W.D.Wash. Feb. 22, 2012); *Del Campo v. Am. Corrective Counseling Serv., Inc.*,718 F.Supp.2d 1116, 1129 (N.D.Cal.2010); *Smith v. Levine Leichtman Capital Partners, Inc.*,723 F.Supp.2d 1205, 1214 (N.D.Cal.2010); *Brink v. First Credit Resources*,57 F.Supp.2d 848, 862 (D.Ariz.1999); *Alonso v. Blackstone Financial Group, LLC*, 962 F. Supp. 2d 1188, 1205 (E.D. Cal. 2013); *Jenkins v. Puckett and Redford P.L.L.C.*, 2020 WL 4517933, at *9 (W.D. Wash. Aug. 3, 2020) (individual employees of debt collector can be held personally liable under FDCPA without piercing corporate veil); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 405 (3d Cir. 2000) (finding a general partner who exercised control over a limited partnership to be liable for the acts of the partnership under the FDCPA); *Commonwealth ex rel. Corbett v. Manson*, 903 A.2d 69, 73 (Pa. Commw. Ct. 2006) (concluding that CEO could be liable for his deceptive conduct under the PUTPCPL).

25.     According to its website, FLC is "Florida Legal Collections, P.A., is a licensed collection agency" and further states under the "FAQs" that "We are a debt collection agency".

26.     FLC maintains a consumer collection agency license with Florida, and has been assigned license number CCA9904893.

27.     FLC is a debt collector within the meaning of FDCPA, 15 U.S.C. § 1692a(6) that it uses postal mail or other instrumentality of interstate commerce, for its business, the principal

purpose of which is the collection of debts; or regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

28.     Mr. Walker, as the person exercising control over FLC's consumer debt collection business, similarly qualifies as a debt collector under the FDCPA.

29.     The FCCPA is more expansive than the FDCPA, and applies to any "person" attempting to collect a consumer debt. § 559.72, Fla. Stat.

30.     The FCCPA is designed to be more expansive and protective than the FDCPA. "The FCCPA unequivocally states its goal — to provide the consumer with the most protection possible under either the state or federal statute. See FLA. STAT. § 559.552." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010).

31.     FLC and Mr. Walker are, or should be, well aware of the requirements of the FDCPA and FCCPA.

32.     TRW hired FLC to assist in collecting an alleged debt from Mrs. Newell.

33.     At all times relevant, FLC was acting at the direction or upon the instruction of TRW and their mutual owner, Mr. Walker.

## FACTUAL ALLEGATIONS

34.     At the end of 2022, Mrs. Newell hired TRW to assist her in forcing the sale of marital real estate referenced in her dissolution of marriage with Luis Miguel Galvan. This Dissolution was Martin County Uniform Case Number 432020DR000598DRAXMX.

35.     This legal representation was regulated by the applicable laws and rules regarding attorney conduct in Florida.

36.     The purpose for hiring TRW was related to the disposition of a personal residence owned with a former spouse, and therefore the legal fees associated with this representation arose from family, personal, or household purposes.

37.     Therefore, any fee debts associated with this representation meet the definitions of a consumer debt under the FDCPA, 15 U.S.C. § 1692a(5), and the FCCPA,§ 559.55(6), Fla. Stat.

38.     The FCCPA has been held to apply attorney's collecting debts from clients. *See Morgan v. Wilkins*, 74 So.3d 179 (Fla. 1st DCA 2011) (FCCPA includes attorneys to whom a former client owes a debt, even if there was no extension of credit).

39.     On January 6, 2023, TRW filed a motion for civil contempt/enforcement.

40.     The drafted part of this motion was not significant in length, and consisted of only 2 pages. The vast majority of the filing contained mostly attached exhibits.

41.     TRW also filed a notice of appearance and notice of unavailability in this matter. Both routine documents taking minimal time to draft.

42.     A hearing on this motion was held on June 12, 2023, before a magistrate judge.

43.     The Court held that the filed motion for civil contempt should be denied. The court held that a motion for partition of property was the correct motion that should have been made.

44.     By August 1, 2023, Mrs. Newell had paid TRW $11,959.85.

45.     For this amount, Mrs. Newell's case had made no significant progress and she had received not material benefit. An improper, two-page motion had been filed without success.

46.     As evidenced by the docket and invoices, a vast majority of these fees were for routine inter-office and administrative matters.

47.     Upon receiving yet another bill on August 1, 2023, Mrs. Newell hired the undersigned counsel regarding the matter of the amounts being charged as owed.

48.     On August 3, 2023, undersigned counsel emailed Mr. Walker indicating he represented Mrs. Newell, requesting Mr. Walker to preserve specific categories of evidence in anticipation of possible litigation, and to provide an opportunity for Mr. Walker to explain or rectify any mistakes.

49.     This email was not directly responded to.

50.     Instead, TRW filed a motion to withdraw as counsel from the state court case and continued to send demands for payment directly to Mrs. Newell.

51.     On August 15, 2023, undersigned counsel emailed both Mr. Walker, as well as additional TRW employees Jayda White and Hena Rodely, Esq. These emails once again specifically detailed categories of evidence to preserve.

52.     The August 15, 2023, email chain also asked if TRW would be willing to participate in the Florida Bar's Fee Arbitration Program.

53.     This request was never responded to.

54.     The August 15, 2023, email chain asked for further elaboration as to reason for the motion to withdraw.

55.     This request was never materially responded to. Instead a vague "irreconcilable differences" reason was given without additional explanation.

56.     The August 15, 2023, email chain also contained a direct request "for all documentation pertaining to this file so that the client's interests are not harmed."

57.     On August 16, 2023, undersigned once again requested the client's case file.

58.     The client's case file was not provided.

59.     Instead, TRW's Rodely stated that all the documents would be in possession of the client and opposing counsel.

60. TRW and its attorneys were required to turn over the case file to ensure the Respondent's interests are protected. *See Florida Bar Rule 4-1.16(d); The Florida Bar v. Varner*, 992 So.2d 224 (Fla. 2008). (Failure to provide successor counsel with a copy of client's file violated Rule 4-1.16(d)); *Florida Bar Ethics Opinion 02-3*.

61. Florida Bar Ethics Opinion 88-11, reconsidered on March 23, 2021, further outlines that the documents requested by the undersigned counsel from The Law Offices of Travis R. Walker, P.A., are reasonably required under the rule.

62. This legal authority was provided to TRW and its employees in the emergency motion to continue the hearing on the motion to withdraw, which was filed and served on August 29, 2023, by undersigned counsel.

63. Indeed, due to the nature of the underlying case, a dissolution of marriage action involving child custody, the documents on the case docket are not generally available to the public. Indeed, even as of January 15, 2025, many of the documents on the docket are still blocked from access by both the Plaintiff and undersigned counsel.

64. Also on August 29, 2023, undersigned counsel sent an email TRW indicating that the documents on the docket were inaccessible, and specifically requested TRW "Please provide all filings, communications with the client, communications with opposing counsel, notes, memos, research, investigations, and reports. I am assuming these documents are all digital, but if there are hard copies of anything please let me know." This communication specifically highlighted what is considered part of the client's case file under the applicable regulations and common understanding.

65. Not such documents were provided.

66.     On September 28, 2023, undersigned once again followed up on the unanswered request for the client's case file.

67.     In response, on September 29, 2023, Ms. Rodely provided 6 screenshots of texts between the former spouses, a copy of the Plaintiff's drives license, a two-page screenshot of a text between Rodely and Plaintiff, and a 2 page screenshot of two emails regarding mediation scheduling.

68.     Rodely, as an agent of TRW, once again indicated anything further was available on the docket and asked what other parts of the "file" were being requested. This was despite the clear identification of what constitutes the client's case file in the August 29, 2023 email and court filing.

69.     No additional aspects of the client's file were transmitted.

70.     Left with no other option, a new hearing on the motion to withdraw was scheduled.

71.     Before that hearing, an agreed order was entered on January 24, 2024, that allowed for TRW to withdraw from the case with the following requirement:

> "Travis R. Walker, Esq., Law Offices of Travis R. Walker, P.A., are hereby ordered to transmit any remaining, non-privileged documentation in the applicable client case file to Mr. Bonan by January 29, 2024. This may be carried out electronically. Nothing in this Order waives or releases any claims."

72.     TRW and Mr. Walker did not comply with this Order, and no such documentation was ever transmitted.

73.     What was transmitted, however, were numerous additional collection attempts.

74.     Since receiving notice of legal representation by the undersigned on August 3, 2023, TRW sent numerous direct collection attempts to Mrs. Newell.

75.     These collection attempts were via numerous methods, including phone calls, texts and emails.

76.     These communications were all for the animating purpose of getting Mrs. Newell to pay TRW additional funds.

77.     Several of these communications occurred after 9 PM and before 8AM.

78.     The collection attempts sought increasingly higher amounts from Mrs. Newell.

79.     TRW continued to charge and demand payment from Mrs. Newell directly regarding the time it was spending trying to withdraw from her case. At least a dozen such communications occurred between August 15, 2023, and September 9, 2023. Some of these communications were between the hours of 4AM and 7AM.

80.     TRW billed for the time it spent refusing to transfer over her case file, even though this is required by the above-referend legal authority from the Florida Bar.

81.     The agreed Order requiring them to transmit the file, which TRW did not comply with, further proves that these balance increases and associated demands for payment were inappropriate.

82.     In November 2023, well before the Court had granted a withdrawal of TRW in the case it had been hired for, TRW assigned the alleged balance to FLC for collection.

83.     Despite its ownership by Mr. Walker, the initial collection letter stated the original creditor was "Travis Walker Law" and not the actual legal name of TRW, which is "The Law Offices of Travis R. Walker, P.A.

84.     The letter demanded payment of $1,574.00.

85.     Of course, given the common ownership by Mr. Walker, it is without question that FLC knew, or should have known, that Mrs. Newell disputed the amount and was represented by legal counsel regarding the alleged debt.

86.     Within 30 days of receiving the initial notice and collection letter from FLC, Mrs. Newell sent FLC a letter reiterating she disputed the debt, requesting validation, and once again identifying the name and address of her legal counsel regarding the account. This letter also requested that FLC stop contacting her regarding the debt.

87.     This letter was sent via Certified Mail, tracking number: 9589071052701243593202, and was delivered on December 19, 2023.

88.     FLC never sent any validation in response to this request, and instead continued to make direct collection communications to Mrs. Newell throughout the first half of 2024.

89.     TRW also engaged in continued collection activity during 2024.

90.     TRW and Mr. Walker have an apparent history of problematic billing practices.

91.     Numerous, negative reviews on websites like Google, Avvo, and yelp feature other consumers vehemently complaining about the billing practices of TRW. **SEE EXHIBIT A**.

92.     On April 28, 2024, Mr. Walker entered into a Conditional Guilty Plea for Consent Judgment in a case brought against him by The Florida Bar in the Supreme Court of Florida. Case Number SC24-0719. The Court approved a stipulation on May 30, 2024, and a formal Admonishment for Minor Misconduct was entered on June 4, 2024.

93.     Part of admonished conduct in this case involved fee disputes with several clients, and Mr. Walker was "directed to attend the Fee Arbitration Program of The Florida Bar with his clients, Laurence J. Knox, Brian J. Fischer, Lana Kowalski, William McKenna, Sonia Amber,

James Horton, Avery Markowitz, and Richard Crandall, within thirty days of the date of this order."

94.     The prohibited collection attempts by TRW, Mr. Walker, and FLC were intentional, as evidenced by:

      a. The pattern of impressible billing practices evidence by the numerous complaints;

      b. The clear communications and knowledge of the legal representation as evidenced by the responses and filings involving underlying counsel and the underlying case;

      c. Refusal to admit error or engage in remedial measures when the issues were raised;

      d. The number of prohibited communications made directly to the Plaintiff.

      e. The decision to hire FLC to collect the amount and continue collections.

95.     As a result of the prohibited conduct by TRW and FLC, Mrs. Newell has suffered extensive damages.

96.     The texts, calls, and emails attempting to solicit payment constitute communications under both the FDCPA and FCCPA. 15 U.S.C. §1692a(2) and §559.55(2) "Communication" means the conveying of information regarding a debt directly or indirectly to any person through any medium." This even includes communications made by a collecting attorney to the consumer's attorney. *See Bishop v. Ross Earle & Bonan*, *P.A.*, 817 F.3d 1268 (11th Cir. 2016).

97.     The Plaintiff has had her time wasted, and has suffered emotional distress in the form of anxiety, sleeplessness, fear, anger, frustration and hopelessness. The Plaintiff has had her

peace and tranquility and right to avoid intrusion upon her seclusion violated. The Plaintiff has lost the benefit of having her hired legal counsel handle these matters instead of her.

98.     The Plaintiff has lost the value of her money regarding the overcharged invoices as well.

99.     The Plaintiff hired TRW to consummate the disposition of the real estate from her dissolved marriage. The conduct described herein has caused this issue to linger and continue to haunt Mrs. Newell. This has impacted her emotionally, mentally, and financially.

100.     These damages are recoverable under the FCCPA and FDCPA. *Rudy v. Synergetic Communication, Inc. et al*, Case No. 8:21-cv-00585-SDM-TGW, M.D. Fla. 2022); *Goodin v. Bank of Am., N.A.*, 114 F. Supp. 3d 1197, 1211 (M.D. Fla. 2015); *Medley v. Dish Network, LLC*, 8:16-cv-2534-CEH-CPT, at *21 (M.D. Fla. Aug. 25, 2023); *Beasley v. Anderson*, Randolf, Price LLC, Case No. 16–2007–CA–005308, 2010 WL 6708036 (Fla. 4th Cir.Ct. April 19, 2010).

101.     Mrs. Newell has hired the undersigned law firm to represent her in this matter and is obligated to pay their reasonable fees and costs.

**COUNT I**
**<u>FLC'S VIOLATIONS OF THE FCCPA</u>**

102.     The Plaintiff adopts and incorporates paragraphs 1 – 101 as if fully restated herein.

103.     FLC violated § 559.72(18), Fla. Stat., when it continued to make direct collection communications after it knew, or should have known, that Mrs. Newell was represented by legal counsel regarding the account it was trying to collect.

104.     FLC violated § 559.72(7), Fla. Stat., when it willfully communicated with Mrs. Newell with such frequency as can be reasonably expected to harass a consumer. Specifically, FLC continued to demand payment from Mrs. Newell within 30 days of her requesting the debt's validation and after she explicitly told them to stop contacting her.

105.    FLC violated § 559.72(9), Fla. Stat., when it attempted to enforce a legal right that did not exist, specifically to collect an amount that was not owed because Mrs. Newell had already been overcharged and the vast majority of the debt related to time spent by TRW and Mr. Walker abdicating their requirements to turn over the case file and only charge reasonable fees for work performed.

106.    As evidenced by the number of violations, the actions of FLC were willful and intentional, or done with a reckless disregard for the consumer's rights under the FCCPA.

107.    The animating purpose of FLC's intentional communications was to extract payment from Mrs. Newell.

**WHEREFORE,** Mrs. Newell respectfully requests this Honorable Court enter judgment against FLC for:

a.    Statutory damages of **$1,000.00** pursuant to § 559.77(2), Fla. Stat.;

b.    Actual damages pursuant to § 559.77(2), Fla. Stat.;

c.    Injunctive relief preventing Defendant from engaging in this conduct;

d.    Punitive damages pursuant to pursuant to § 559.77(2), Fla. Stat.

e.    Reasonable costs and attorney's fees pursuant to § 559.77(2), Fla. Stat.; and,

f.    Such other relief that this Court deems just and proper.

### COUNT II
### FLC'S VIOLATIONS OF THE FDCPA

108.    The Plaintiff adopts and incorporates paragraphs 1 – 101 as if fully stated herein.

109.    FLC violated 15 U.S.C. § 1692e(2)(a) and 15 U.S.C. § 1692e when it asserted Mrs. Newell owed any money to TRW, when the underlying debt the result of impermissible overbilling and unreasonable charges.

110. FLC violated 15 U.S.C. § 1692c(b) when it directly contacted Mrs. Newell numerous times in an attempt to collect on an account after receiving notice that she had legal counsel regarding the account. FLC and was provided the contact information for that legal counsel.

111. FLC violated 15 U.S.C. § 1692c(c) when it directly contacted Mrs. Newell numerous times in an attempt to collect on an account after receiving her request that she disputed the alleged debt and that she wanted such communications to cease.

112. FLC violated 15 U.S.C. § 1692g(b) when it failed to mail the validating documentation to the consumer in response to the validation request delivered on December 19, 2023, and instead attempted to collect the debt within the 30 days cessation period required under this statute.

113. FLC violated 15 U.S.C. § 1692d when it continued to text and call Mrs. Newell directly in an attempt to collect a debt when she requested such contact cease, informed FLC that the debt was disputed, and provided FLC with her lawyer's contact information.

114. FLC violated 15 U.S.C. § 1692f and 15 U.S.C. § 1692f(1) when attempted to collect a debt which was the result of impermissible overbilling by the creditor, an attorney who also owns FLC and who was actively trying to leverage a withdrawal during a majority of the improper collection attempts.

115. FLC's conduct was intentional, and the animating purpose of its conduct was to extract payment from Mrs. Newell.

**WHEREFORE,** Mrs. Newell respectfully requests this Honorable Court enter judgment against FLC for:

a. Statutory damages of **$1,000.00** pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.       Actual damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.       Injunctive relief preventing Defendant from engaging in this conduct;

d.       Reasonable costs and attorneys' fees pursuant to § 559.77(2), Fla. Stat.; and,

e.       Such other relief that this Court deems just and proper.

## COUNT III
## TRW VIOLATIONS OF THE FCCPA

116.    The Plaintiffs adopts and incorporates paragraphs 1 – 101 as if fully restated herein.

117.    TRW violated § 559.72(18), Fla. Stat., when it continued to make direct collection communications after it knew Mrs. Newell was represented by counsel regarding the debts.

118.    TRW violated § 559.72(7), Fla. Stat., when it willfully communicated with Mrs. Newell with such frequency as can be reasonably expected to harass a consumer. Specifically, TRW continued to demand payment from Mrs. Newell within 30 days of her requesting the debt's validation and after she explicitly told them, through their agent FLC, to stop contacting her. TRW continued to send collections communications, including at times more than 7 in one week, to Mrs. Newell directly. TRW continued to attempt to collect form Mrs. Newell even while FLC was simultaneously also trying to collect the alleged debt.

119.    TRW violated § 559.72(17), Fla. Stat., when it willfully communicated with Mrs. Newell in an attempted to collect a debt by between the hours of 9PM and 8AM on numerous occasions.

120.    TRW violated § 559.72(9), Fla. Stat., when it attempted to enforce a legal right that did not exist, specifically collect an amount that was not owed because Mrs. Newell had been overcharged, and the vast majority of the debt related to time spent by TRW abdicating their requirements to turn over the case file. TRW was well aware that the fees it was charging for the

time spent inappropriately withdrawing from the case and refusing to hand over the client file were uncollectible under the applicable rules regulating a Florida law firm like TRW.

121.    As evidenced by the number of violations, the number of other complaints submitted by other consumer clients of TRW, and the discipline issued by the Supreme Court of Florida against the founder and managing partner of TRW regarding several other clients, TRW was aware or should have been aware of the numerous compliance issues with its billing practices.

**WHEREFORE,** Mrs. Newell respectfully requests this Honorable Court enter judgment against TRW for:

a.    Statutory damages of **$1,000.00** pursuant to § 559.77(2), Fla. Stat.;

b.    Actual damages pursuant to § 559.77(2), Fla. Stat.;

c.    Injunctive relief preventing Defendant from engaging in this conduct;

d.    Punitive damages pursuant to pursuant to § 559.77(2), Fla. Stat.

e.    Reasonable costs and attorney's fees pursuant to § 559.77(2), Fla. Stat.; and,

f.    Such other relief that this Court deems just and proper.

## COUNT IV
## MR. WALKER'S VIOLATIONS OF THE FDCPA

122.    The Plaintiff adopts and incorporates paragraphs 1 – 101 as if fully stated herein.

123.    As the owner and chief manager of both TRW and FLC, Mr. Walker violated 15 U.S.C. § 1692e(2)(a) and 15 U.S.C. § 1692e when he directed his companies to demand payment from Mrs. Newell as the result of excessive and unreasonable overbilling. Mr. Walker was also personally involved in the underlying state court case.

124.    As the owner and chief manager of both TRW and FLC, Mr. Walker violated 15 U.S.C. § 1692c(b) the companies under his control and direction contacted Mrs. Newell numerous

times in an attempt to collect on an account after direct receiving notice that she had legal counsel regarding the account and was directly provided the contact information for that legal counsel.

125. As the owner and chief manager of both TRW and FLC, Mr. Walker violated 15 U.S.C. § 1692c(c) when his companies directly contacted Mrs. Newell numerous times in an attempt to collect on an account after receiving her request that she disputed the alleged debt and that she wanted such communications to cease.

126. As the owner and chief manager of both TRW and FLC violated 15 U.S.C. § 1692g(b) when it failed to mail the validating documentation to the consumer in response to the validation request delivered on December 19, 2023, and instead attempted to collect the debt within the 30 days cessation period required under this statute.

127. As the owner and chief manager of both TRW and FLC, Mr. Walker violated 15 U.S.C. § 1692d when his companies continued to text and call Mrs. Newell directly in an attempt to collect a debt when she requested such contact cease, informed FLC that the debt was disputed, and provided FLC with her lawyer's contact information.

128. As the owner and chief manager of both TRW and FLC, Mr. Walker violated 15 U.S.C. § 1692f and 15 U.S.C. § 1692f(1) when his companies attempted to collect a debt which was the result of impermissible overbilling by the creditor, and continued to harass Mrs. Newell for payment regarding time it spent combating the transfer of her case file even though such transfer was required by the applicable Florida Bar rules.

129. Mr. Walker conduct was intentional, and the animating purpose of his personal conduct and the conduct of his companies under his direction was to extract payment from Mrs. Newell.

**WHEREFORE,** Mrs. Newell respectfully requests this Honorable Court enter judgment against TRW for:

a.      Statutory damages of **$1,000.00** pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.      Actual damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.      Injunctive relief preventing Defendant from continuing to engage in this conduct;

d.      Reasonable costs and attorneys' fees pursuant to § 559.77(2), Fla. Stat.; and,

Such other relief that this Court deems just and proper.

**COUNT V**
**MR. WALKER'S VIOLATIONS OF THE FCCPA**

130.    The Plaintiffs adopts and incorporates paragraphs 1 – 101 as if fully restated herein.

131.    Mr. Walker violated § 559.72(18), Fla. Stat., when his agents at his direction continued to make direct collection communications after it knew Mrs. Newell was represented by counsel regarding the debts.

132.    Mr. Walker violated § 559.72(7), Fla. Stat., when his agents at his direction willfully communicated with Mrs. Newell with such frequency as can be reasonably expected to harass a consumer. Specifically, both of his companies continued to demand payment from Mrs. Newell within 30 days of her requesting the debt's validation and after she explicitly told them, to stop contacting her.

133.    Mr. Walker violated § 559.72(17), Fla. Stat., when his agents at his direction willfully communicated with Mrs. Newell in an attempt to collect a debt by between the hours of 9PM and 8AM on several occasions.

134.    Mr. Walker violated § 559.72(9), Fla. Stat., when it attempted to enforce a legal right that did not exist, specifically collect an amount that was not owed because Mrs. Newell had been overcharged. Mr. Walker and his agents charged the Plaintiff $11,959.85, largely for routine

administrative and interoffice communications, only to file the wrong, two page motions. Mr. Walker than refused to transfer the client's case file in compliance with the applicable regulations, and instead proceeded to demand additional payment for the time spent attempting to withdraw and refusing to transfer the file through his companies TRW and FLC. Mr. Walker was well aware that the fees it was charging for the time spent inappropriately withdrawing from the case and refusing to hand over the client file were uncollectible under the applicable regulations.

135.    As evidenced by the number of violations, the number of other complaints submitted by other consumer clients of TRW, the disciplinary proceedings rendered in the Supreme Court of Florida against Mr. Walker, the conduct alleged herein was intentional or done with a reckless disregard for Mrs. Newell's rights.

**WHEREFORE,** Mrs. Newell respectfully requests this Honorable Court enter judgment against TRW for:

a.    Statutory damages of **$1,000.00** pursuant to § 559.77(2), Fla. Stat.;

b.    Actual damages pursuant to § 559.77(2), Fla. Stat.;

c.    Injunctive relief preventing Defendant from continuing to engage in this conduct.

d.    Punitive damages pursuant to pursuant to § 559.77(2), Fla. Stat.

e.    Reasonable costs and attorney's fees pursuant to § 559.77(2), Fla. Stat.; and,

f.    Such other relief that this Court deems just and proper.

## JURY TRIAL DEMANDED

The Plaintiffs hereby demands a jury trial on all issues so triable.

Respectfully submitted on January 16, 2025, by:

/s/ *Thomas M. Bonan*
Thomas M. Bonan, Esq.

Florida Bar # 118103
Seraph Legal, P.A.
2124 W. Kennedy Blvd., Ste. A
Tampa, FL 33606
(813) 321-2347
Tbonan@seraphlegal.com
Counsel for Plaintiff

Exhibit List -  A – Online Negative Reviews of TRW and Mr. Walker by Clients.

EXHIBIT A – NEGATIVE ONLINE REVIEWS OF TRW



EXHIBIT A – NEGATIVE ONLINE REVIEWS OF TRW



EXHIBIT A – NEGATIVE ONLINE REVIEWS OF TRW



EXHIBIT A – NEGATIVE ONLINE REVIEWS OF TRW



EXHIBIT A – NEGATIVE ONLINE REVIEWS OF TRW



EXHIBIT A – NEGATIVE ONLINE REVIEWS OF TRW



EXHIBIT A – NEGATIVE ONLINE REVIEWS OF TRW



EXHIBIT A – NEGATIVE ONLINE REVIEWS OF TRW



EXHIBIT A – NEGATIVE ONLINE REVIEWS OF TRW



EXHIBIT A – NEGATIVE ONLINE REVIEWS OF TRW



EXHIBIT A – NEGATIVE ONLINE REVIEWS OF TRW



EXHIBIT A – NEGATIVE ONLINE REVIEWS OF TRW



EXHIBIT A – NEGATIVE ONLINE REVIEWS OF TRW



EXHIBIT A – NEGATIVE ONLINE REVIEWS OF TRW



EXHIBIT A – NEGATIVE ONLINE REVIEWS OF TRW



EXHIBIT A – NEGATIVE ONLINE REVIEWS OF TRW



EXHIBIT A – NEGATIVE ONLINE REVIEWS OF TRW



EXHIBIT A – NEGATIVE ONLINE REVIEWS OF TRW



EXHIBIT A – NEGATIVE ONLINE REVIEWS OF TRW



EXHIBIT A – NEGATIVE ONLINE REVIEWS OF TRW



EXHIBIT A – NEGATIVE ONLINE REVIEWS OF TRW



EXHIBIT A – NEGATIVE ONLINE REVIEWS OF TRW



EXHIBIT A – NEGATIVE ONLINE REVIEWS OF TRW

THE LAW OFFICES OF TRAVIS R WALKER - Updated January 2025 - 46 Ph…wy, Stuart, Florida - Divorce & Family Law - Phone Number - Yelp          1/15/25, 8:25 PM

in Divorce & Family Law

**About the Business**

Travis W.
Business Owner

Virtual Consultations via Phone or Zoom with an Attorney directly. We are here to help you through the most difficult time of your lives with combined knowledge and expertise.

Read more

**Location & Hours**

Suggest an edit ✐

| | | |
|---|---|---|
| Mon | 8:30 AM - 5:30 PM | |
| Tue | 8:30 AM - 5:30 PM | |
| Wed | 8:30 AM - 5:30 PM | Closed now |
| Thu | 8:30 AM - 5:30 PM | |
| Fri | 8:30 AM - 5:30 PM | |
| Sat | Closed | |
| Sun | Closed | |

1100 SE Federal Hwy
Stuart, FL 34994

Get directions

**You Might Also Consider**

Sponsored ⓘ

**Miranda Mediation & Immigrati Group**

Choosing Florida Family Mediation Group offers numerous services, including: 1. Low... read more

**Amenities and More**

⬚ Open to All

**Ask the Community**

Ask a question +

Yelp users haven't asked any questions yet about **The Law Offices of Travis R Walker**.

**People also searched for**

Q Divorce Attorney     Q Divorce Paralegal     Q Attorney     Q Law Firm

Q Mediators     Q Living Trust Attorney

**Recommended Reviews**

https://www.yelp.com/biz/the-law-offices-of-travis-r-walker-stuart-2?rr=1          Page 2 of 7

## EXHIBIT A – NEGATIVE ONLINE REVIEWS OF TRW

THE LAW OFFICES OF TRAVIS R WALKER - Updated January 2025 - 46 Ph...wy, Stuart, Florida - Divorce & Family Law - Phone Number - Yelp          1/15/25, 8:25 PM

ⓘ **Your trust is our top concern,** so businesses can't pay to alter or remove their reviews. Learn more about reviews.                                                          ✕

**Username**
Location
🏙 0  🏪 0  🖼 0

⭐⭐⭐⭐⭐ Select your rating
Start your review of **The Law Offices of Travis R Walker**

**Overall rating**

⭐⭐⭐⭐⭐

7 reviews

5 stars
4 stars
3 stars
2 stars
1 star

[Yelp Sort ⌄]  [1 star ⌄]                                    Search reviews  🔍

1 star (4 reviews)   [Clear filter]

**Alma P.**                                                                    ...
Fredericksburg, VA
🏙 606  🏪 5  🖼 0

⭐ Feb 2, 2024

They asked for a retainer and told me that they would me prepare for mediation, and I was told that they care.
NOPE, they did nothing, absolutely NOTHING! But, take my money!
In fact, they lied told me mediation was not possible. Well, since I lost everything from Hurricane IAN, like my house and my business, I qualified for a free attorney. Guess What? My free attorney won my case in less than two months.
I demand a refund, since they lied and did NOTHING!
I have yet to hear a single response.
Now, I have an attorney to sue them. Not fun.
Do yourself a favor and STAY AWAY FROM TRAVIS WALKER LAW FIRM!!!
They are the worst humans on the planet. I cannot imagine a worse lawfirm to work with. They only thing that they will do is take your money!

💡                🖐               ♡               😣
Helpful 0      Thanks 0      Love this 0      Oh no 0

**Susan S.**                                                                   ...
Port St. Lucie, FL
🏙 0  🏪 2  🖼 0

⭐ Jan 20, 2023

Don't waste your money! They pad there bills! They admitted they drop the ball and would not refund my money after getting not answers to my original reason for hiring them. Then they knew the case was coming to an end and tried to get more money from us! They never followed thru with anything. They cause a lot of additional emotional and financial stress to an already stressful situation!!! Please, keep looking. Don't stop with this law firm! If you do watch the billing very closely!

https://www.yelp.com/biz/the-law-offices-of-travis-r-walker-stuart-2?rr=1                          Page 3 of 7

## EXHIBIT A – NEGATIVE ONLINE REVIEWS OF TRW

THE LAW OFFICES OF TRAVIS R WALKER - Updated January 2025 - 46 Ph...wy, Stuart, Florida - Divorce & Family Law - Phone Number - Yelp          1/15/25, 8:25 PM

   

Helpful 0     Thanks 0     Love this 0     Oh no 0

**Randi B.**
San Francisco, CA
📷 0 💬 1 📷 0

⭐ May 26, 2020

Run from this grossly negligent attorney whom received evidence of commingling, self dealing and fraud yet withheld it from client until years later when he dropped client after billing client $76,000 in legal fees for creating a motion for a forensic accounting then leading her to court with no professional witness (law101)only after handing case off to two other attorneys in his office whom are no longer with him

Client would have been better off without him, would have acquired evidence to have financial guardian to her father's estate arrested and charged allowing her to be reimbursed for his Ridiculous fees of $97k not counting accounting fees .. evidence was never revealed to client, it was actually received by client in a box of shuffled documents he ordered client to pick up, undiscovered in he either placed evidence in box to drag case out or to make $, he is that incompetentl, or be received money from opposing council to hide evidence the police could have used against him, time sensitive evidence!

1. Lost payments had client get copies from back to show he cashed the checks. Over billed / double billing refused client itemized bill till This very day

2. Withheld time sensitive evidence that would have won case

3. told client "You owe me $20k if you don't pay me the sum now, then we will take time handling your case, we will have all the time in the world" thats after he received $35,000 for doing nothing and was receiving large on time payments every month, on a case where he was only hired to open a direct line of communication with Estate's Atty Kevin Hugh Hendrickson so to learn final distribution, a act he was given $5k cash upon first meeting in his assuring he could and would open line if communication per judge even ordering client hire Atty for that purpose but instead he billed client $13,091 in fives days ! For preparing for hearing on hearing to move back final hearing , when he was hired to make certain opposing council did not move back final hearing then he moves it back stating opposing council moved date back a complete lie court states he moved date back

3. Created motion then dumped it stating better motion then dumped it then new motion thrown off of court because he just passed the SOL! And he had no professional witness after boasting his office had three CPA's!

4. He placed other clients emails and personal info in another clients box of documents

Criminal Negligence!
Dangerous reviews are fraudulent

  

Helpful 0     Thanks 0     Love this 0     Oh no 0

**Diana F.**
San Francisco, CA
📷 0 💬 2 📷 0

⭐ Jan 11, 2019

Be aware of this firm will charge you for breathing!!! You get nothing for your money and they don't care about their client or their wishes!!!

   

Helpful 2     Thanks 0     Love this 0     Oh no 0

1 of 1

19 other reviews that are not currently recommended ⌄

https://www.yelp.com/biz/the-law-offices-of-travis-r-walker-stuart-2?rr=1                    Page 4 of 7