**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-14017-CIV-MIDDLEBROOKS/MAYNARD**

LINDSEY NEWELL,

     **Plaintiff,**

vs.

THE LAW OFFICES OF TRAVIS R.
WALKER, *et al.*,

     **Defendants.**

_____/

## REPORT & RECOMMENDATION

This matter is before me upon Plaintiff's Motion for Additional Discovery Sanctions ("Motion"), DE 80, which presiding U.S. District Judge Donald M. Middlebrooks has referred to me for appropriate disposition, DE 85.  For the following reasons, I recommend that the Motion be **GRANTED IN PART AND DENIED IN PART**.

## FACTS ALLEGED IN FIRST AMENDED COMPLAINT [DE 27]

At the end of 2022, Plaintiff Lindsey Newell hired Defendant Law Offices of Travis R. Walker, P.A. ("Law Firm") to represent her in connection with divorce proceedings in which Ms. Newell wished to force the sale of a personal residence she owned with her ex-spouse.  DE 27 at 6 ¶¶ 35–38.  By August 1, 2023, Ms. Newell had paid the Law Firm $11,959.85, but the Law Firm made no significant progress in her case.  *Id.* at 7 ¶¶ 48–49.  Most of the fees were for "routine inter-office and administrative matters."  *Id.* at 7 ¶ 50.  After receiving another invoice from the Law Firm on August 1, 2023, Ms. Newell hired attorney Thomas Bonan to represent her in dealing with the Law Firm.  *Id.* at 7 ¶ 51.

On August 3, 2023, Mr. Bonan emailed Mr. Walker.  DE 27 at 7 ¶ 52.  Mr. Bonan said he represented Ms. Newell and requested that the Law Firm preserve specific categories of evidence in anticipation of possible litigation.  *Id.*  The Law Firm did not respond and instead filed a motion to withdraw as counsel in the divorce case.  *Id.* at 7 ¶¶ 53–54.  The Law Firm also continued to send payment demands directly to Ms. Newell.  *Id.*

On August 15, 2023, Mr. Bonan emailed Mr. Walker again, in addition to two other Law Firm employees, Jayda White and Attorney Hena Rodely.  *Id.* at 8 ¶ 55.  The email again asked Mr. Walker and the Law Firm to preserve specific categories of evidence.  *Id.* at 8 ¶¶ 55–57.  No one responded to the email.  *Id.* at 8 ¶ 58.

On August 16, 2023, Mr. Bonan emailed again to request Ms. Newell's client file—the second such request.  DE 8 at ¶¶ 61–62.  The Law Firm did not provide the file, and Ms. Rodely said Ms. Newell and opposing counsel in the state case had all the documents.  *Id.* at 8 ¶ 64.  Mr. Bonan emailed the Law Firm again, noting that the requested documents were inaccessible on the docket and specifically requesting that the Law Firm provide "all filings, communications with [Ms. Newell], communications with opposing counsel, notes, memos, research, investigations, and reports."  *Id.* at 9 ¶¶ 69–70.  The Law Firm did not provide the documents.  *Id.* at ¶ 71.

On September 28, 2023, Mr. Bonan requested Ms. Newell's case file again.  DE 27 at 9 ¶ 72.  This time, Ms. Rodely provided "six screenshots of texts between the former spouses, a copy of [Ms. Newell's] . . . license, a two-page screenshot of a text between Ms. Rodely and [Ms. Newell], and a two-page screenshot of two emails trying to coordinate a mediation."  *Id.* at 9–10 ¶ 73.  No one from the Law Firm disclosed any additional aspects of the file.  *Id.* at 10 ¶¶ 75–76.

In November 2023, the Law Firm assigned the collections account for Ms. Newell to Defendant Florida Legal Collections, P.A. ("Florida Legal Collections"), another company Mr.

2

Walker owns.  DE 27 at 12 ¶¶ 94–95, 97.  Florida Legal Collections' initial collection letter to Ms. Newell demanded $1,574.  *Id.* at 12 ¶ 96.  Ms. Newell responded with a letter disputing and requesting validation of the debt, identifying her legal counsel, and requesting that Florida Legal Collections stop contacting her regarding the debt.  *Id.*  Florida Legal Collections never sent any validation and instead continued to make direct collection communications to Ms. Newell throughout the first half of 2024.  *Id.* at 13 ¶¶ 100, 102.

On January 24, 2024, the state court entered an agreed order allowing the Law Firm to withdraw from the divorce case and requiring the Law Firm "to transmit any remaining, non-privileged documentation in the applicable client case file to Mr. Bonan by January 29, 2024."  DE 27 at 10 ¶ 78.  Neither Mr. Walker nor the Law Firm complied.  *Id.* at 10 ¶ 79.  Instead, Defendants attempted to collect additional payment from Ms. Newell, including through telephone calls, texts, and emails.  *Id.* at 10–11 ¶¶ 80–87.  Some of the collection attempts occurred between 9:00 PM and 8:00 AM.  *Id.* at 11 ¶ 88.

## **PROCEDURAL HISTORY**

On January 15, 2025, Ms. Newell filed a five-count Complaint against Mr. Walker, the Law Firm, and Florida Legal Collections, alleging violations of the Florida Consumer Collection Practices Act ("FCCPA") and the Fair Debt Collection Practices Act ("FDCPA").  DE 1.  The Complaint alleges Mr. Walker and his companies violated these statutes by contacting Ms. Newell to collect a debt after knowing she was represented by counsel, contacting her with such frequency and at such times as to constitute harassment, attempting to collect an amount in excess of what she owed, and overbilling in the underlying divorce case.  *Id.*

On May 21, 2025, Ms. Newell filed a First Amended Complaint.  DE 27.  On June 4, 2025, I entered a Pretrial Scheduling Order setting a discovery deadline of September 29, 2025.  DE 37.

On September 5, 2025, Ms. Newell's counsel moved for a Clerk's default against all Defendants based on their failure to adhere to Court-ordered deadlines for responding to the Amended Complaint.  DE 43.  A Clerk's default—the second in the case—was entered on September 8, 2025.  DE 48.  On September 10, 2025, Defendants moved to set aside the Clerk's default.  DE 51.

After recounting Defendants' missed deadlines, Judge Middlebrooks granted the motion to set aside the Clerk's default based on the strong preference that lawsuits be resolved on the merits rather than by default posture but noted that the "case has a troubling history of delay by the Defendants."  DE 55 at 1, 4.  The Court also noted Ms. Newell's "valid concerns about the upcoming discovery deadline given Defendants' failure to participate in discovery."  *Id.* at 4.  Considering those concerns, which were laid out in detail in Ms. Newell's unopposed motion to amend the Pretrial Scheduling Order, DE 56, on October 1, 2025, the Court extended the discovery deadline to December 28, 2025.  DE 57.  Also on October 1, 2025, Ms. Newell filed a motion to dismiss Defendants' counterclaims, DE 58, and Attorney Seth Adam Kolton entered a notice of appearance on behalf of all three Defendants.  DE 59.

Defendants failed to respond to the pending motion to dismiss the counterclaims by the deadline of October 15, 2025.  The Court entered an Order requiring Defendants to show cause why the motion should not be granted based on Defendants' failure to timely respond.  DE 63.  On October 31, 2025, Defendants responded through their counsel, Mr. Kolton, stating that an administrative error had prevented Mr. Kolton from receiving filings in the case, but the error was resolved.  DE 64, DE 65.  The Court accepted this explanation and permitted Defendants to file their response to Ms. Newell's motion to dismiss.  DE 70.

## DISCOVERY HISTORY

On November 4, 2025, Ms. Newell moved to compel disclosures, discovery responses, and depositions. DE 66. That discovery motion was referred to me, DE 67, and I ordered expedited briefing. DE 68.

In the motion to compel, Ms. Newell asserted that even five months after the scheduling conference, Defendants had never served initial disclosures. DE 66 at 2. Further, Ms. Newell noticed depositions of "collection managers" for the Law Firm and Florida Legal Collections, and Defendants informed Ms. Newell immediately before the start of the depositions that no witnesses would appear. *Id.* at 3–4. During conferral, Defendants confirmed that they would not be producing witnesses in response to the deposition notices. *Id.* at 4. Finally, Defendants had failed to serve responses to written discovery or produce responsive documents even after Ms. Newell agreed to extensions of the response deadlines. *Id.* at 9. Ms. Newell sought an order (1) compelling the missing disclosures; (2) deeming objections to written discovery requests waived and requiring responses within 10 days; (3) deeming requests for admissions admitted; (4) requiring the Law Firm and FLC to produce collection managers for depositions within 15 days; and (5) awarding fees and costs under Federal Rule of Civil Procedure 37. *Id.* at 12–13.

On November 12, 2025, Defendants filed a response in which they did "not dispute that discovery responses [we]re overdue." DE 69 at 1. Instead, Defendants said the sanctions requested were excessive, particularly considering Defendants' recent retention of Mr. Kolton as counsel. *Id.* at 1, 7. Defendants promised they would "promptly" serve disclosures and discovery responses. *Id.* at 2, 4.

On November 18, 2025, I granted in part and denied in part Ms. Newell's motion to compel. DE 73. I noted that the case had been pending for ten months, the previously extended discovery

5

period was nearing its end, expiring on December 28, 2025,[1] and Defendants had undisputedly delayed discovery without justification. *Id.* at 1–2.  I explained that Defendants' failure to comply with discovery obligations was particularly egregious considering that two Defendants were an attorney admitted to practice in this jurisdiction and his law firm. *Id.* at 2–3.  I ordered Defendants to (1) serve complete initial disclosures by November 21, 2025; (2)  serve complete responses (with objections as appropriate) to all outstanding written discovery requests by November 28, 2025; (3) confer with Ms. Newell's counsel and schedule depositions to occur by December 12, 2025; and (4) confer and file a joint status report confirming compliance with the Order by December 2, 2025.  DE 73 at 4.  I warned the parties that I would "not hesitate to award fees or other appropriate sanctions upon a showing that any party is willfully obstructing the discovery process." *Id.* at 3-4, 5.

On December 23, 2025, Ms. Newell filed the pending Motion for Additional Discovery Sanctions ("Motion for Sanctions").  DE 80.  The Motion for Sanctions is fully briefed, DE 87, DE 90, DE 85.[2]  I held an evidentiary hearing on Monday, February 9, 2026.  DE 98.  The matter is now ripe for review.

## EVIDENTIARY HEARING

At the evidentiary hearing, Defendants called two witnesses: Mr. Walker and Robert Woodbury, a Law Firm paralegal.  DE 103.

---

[1] Defendants filed an opposed motion for another extension of the discovery deadline.  DE 81.  Judge Middlebrooks denied the Motion, finding Defendants had "not shown they ha[d] acted with diligence" and had not established why the broad discovery they sought was needed.  DE 84.  Therefore, the discovery period expired on December 28, 2025.

[2] After I notified Defendants of an apparent artificial intelligence hallucination in their response, DE 87, they withdrew their original response, DE 99, and an amended response.  DE 100.  These filings acknowledged that there were additional hallucinations in the original response.  DE 99 at 1; DE 100 at 1 n.1.  While the amended response contained replacements for many incorrect case citations, its substance did not materially differ from that of the original response.

Mr. Walker testified that the Law Firm keeps client files as paper copies and in cloud storage, but Ms. Newell's file is missing from both places. Mr. Walker said he had Law Firm staff search thousands of hard-copy files and had the Law Firm's IT vendor, Capstone, search the cloud server, both to no avail. Though Mr. Walker said he first tried to find Ms. Newell's client file shortly after receiving a litigation hold notice from Mr. Bonan, the only documentary evidence he had of any instruction to anyone to search for Ms. Newell's file was an email to Capstone sent in November 2025. According to Mr. Walker, the Capstone searches in November 2025 were overinclusive and originally located over 100 gigabytes of data, which he turned over to his lawyer for review. Mr. Walker also spoke of another third-party company, Interpose, that was holding Florida Legal Collections' records and demanding that Florida Legal Collections pay $20,000 in invoices before it would release the files. Mr. Walker testified that when the Law Firm receives a litigation hold, the practice is for designated employees to "handle the process," but Mr. Walker does not know if that happened in this case when he and his Law Firm received the litigation hold notice from Mr. Bonan. Mr. Walker acknowledged that Mr. Bonan sent an evidence preservation request, DE 90-2, to Mr. Walker's email address on August 3, 2023.

The other witness, paralegal Robert Woodbury, joined the Law Firm's staff in September 2025, while this case was already pending. He testified that on the Friday before the evidentiary hearing, he spent the day running searches in the Law Firm's emails for documents and information responsive to the discovery requests in this case. He also talked to Capstone. His search ultimately produced 29 potentially responsive emails.

## LEGAL STANDARD

A district court has broad authority to impose sanctions under Rule 37 when a party fails to obey a discovery order. *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir.

7

1993). Rule 37(b)(2) provides for, on the one hand, dispositive sanctions such as the entry of an involuntary dismissal or default judgment and, on the other hand, lesser sanctions such as striking pleadings, staying proceedings, designating facts or elements as undisputed, and precluding the introduction of certain evidence. Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii).

The party moving for sanctions bears the burden of making a *prima facie* showing that a court order has been violated. *U.S. v. One 1999 Forty-Seven Foot Fountain Motor Vessel*, 240 F.R.D. 695, 698 (S.D. Fla. 2007) (citing *In re Chase & Sanborn Corp.*, 872 F.2d 397, 400 (11th Cir. 1989)). Once the moving party satisfies its burden, the non-moving party must defend its failure to follow the order in question by showing that it was unable to comply with the court order after "all reasonable efforts." *In re Chase & Sanborn Corp.*, 872 F.2d at 400 (quoting *U.S. v. Rizzo*, 539 F.2d 458, 465 (5th Cir. 1976)); *One 1999 Forty-Seven Foot Fountain Motor Vessel,* 240 F.R.D. at 698. The non-moving party "'must go beyond a mere assertion of inability and satisfy [its] burden of production on the point by introducing evidence in support of [its] claim.'" *In re Chase & Sanborn Corp.*, 872 F.2d at 400 (quoting *United States v. Hayes*, 722 F.2d 723, 725 (11th Cir. 1984)).

The moving party does not need to show an opposing party's willfulness or bad faith for the Court to impose lesser sanctions. *See Coquina Invs. v. TD Bank, N.A.,* 760 F.3d 1300, 1319 (11th Cir. 2014) ("'Our caselaw is clear that only in a case where the court imposes the most severe sanction—default or dismissal—is a finding of willfulness or bad faith failure to comply necessary.'" (quoting *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1049 (11th Cir. 1994)). Thus, a finding of willfulness is not necessary to direct that designated facts be taken as established for purposes of an action. *Coquina Investments,* 760 F.3d at 1319–20.

"Rule 37 sanctions are imposed not only to prevent unfair prejudice to the litigants but also to ensure the integrity of the discovery process." *Aztec Steel Co. v. Fla. Steel Corp.*, 691 F.2d 480, 482 (11th Cir. 1982).  A district court has "substantial discretion in deciding whether and how to impose sanctions under Rule 37." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997).

Additionally, "[i]nstead of or in addition to [other sanctions], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(c).

## **DISCUSSION**

Applying these standards, I consider Ms. Newell's contentions regarding Defendants' discovery failures in this case.  Ms. Newell asserts that Defendants have failed to comply with my prior discovery order as follows.

### A.  Failure to Produce Documents Showing Defendants' Debt Collection Attempts

Ms. Newell complains that Defendants failed to produce any records or documentation reflecting their efforts to collect a debt from the Ms. Newell, information going to the heart of this collections dispute case.  Despite specific discovery requests, Defendants failed to produce communications to or from Ms. Newell or her counsel concerning her collections account; records reflecting the dates or times of any phone calls, texts, or written correspondence attempting to collecting on the debt; documents identifying the original creditor; records regarding attempts to validate the debt; or materials reflecting Defendants' supervision of employees who contacted Ms. Newell regarding the debt.  DE 80-1, Resp. to RFP Nos. 2, 3, 24, 26, 35; DE 80-2 Resp. to RFP

9

Nos. 1, 7, 8, 14, 21, 30, 33; DE 80-9, Resp. to RFP Nos. 1-5, 7-10, 15-19, 23, 24, 26, 27, 29, 31, 32, 34, 37, 39.

Ten months into this case—and only one month before the close of the discovery period—Defendants Travis Walker and the Law Firm represented that they were "currently working with their tech support team" to obtain the requested materials.  DE 80-2, Resp. to RFP Nos. 1, 7, 8, 27, 30, 33, 34.  Defendant Florida Legal Collections further claimed that it could not obtain the documents because a former employee, Jason Lichter, had "deleted special programming" when he was fired in August 2024, and the software developer, Interpose, refused to provide access to the documents unless Florida Legal Collections paid $20,000.  DE 80-5, Resp. to Interrogatories 3–16, 18–25; DE 80-9, Resp. to RFP Nos. 1–13, 15–21, 23–24, 26–27, 29, 31–39; DE 80-10, Response to RFA Nos. 3–25.

Discovery closed on December 28, 2025.  Defendants never supplemented their responses to these requests and produced no responsive documents.  They likewise submitted no affidavits, declarations, or other competent evidence demonstrating that the materials were unavailable prior to the close of discovery.  They also never provided Ms. Newell with contact information for Interpose or Jason Lichter, who Defendants claimed was "solely responsible for all collection activities during the period of time in question."  DE 80-9 at 1.

At the evidentiary hearing, Travis Walker testified that Lichter destroyed Defendants' access to the relevant software before his departure, preventing retrieval of the requested records. He further asserted that Interpose demanded payment of $20,000 in outstanding invoices before restoring access. Mr. Walker, however, produced no documentation supporting this claim and acknowledged under oath that he had not contacted Interpose about the issue since early 2025.

The record reflects no meaningful effort by Mr. Walker to obtain the documents during the discovery period.  Nor did he provide contact information for Interpose so that Ms. Newell could subpoena the records directly.  A party may not avoid its discovery obligations by relying on unsupported assertions that responsive information is inaccessible, particularly where the party has made no diligent attempt to secure it.  *See, e.g.*, *Trinos v. Quality Staffing Servs. Corp.*, 250 F.R.D. 696, 698 (S.D. Fla. 2008) ("[C]ourts should only limit discovery based on *evidence* of the burden involved, not on a mere recitation that the discovery request is unduly burdensome.'") (emphasis in original) (citation omitted).

I find that Defendants' failure to produce the requested materials was not substantially justified and no other circumstances render an award of sanctions unjust.  The prolonged delay, unsupported explanations, and complete failure to pursue reasonable avenues for obtaining the records demonstrate, at a minimum, willful noncompliance with Defendants' discovery obligations.  Accordingly, sanctions are warranted for this discovery failure.

In determining the appropriate sanction, I note that information regarding Defendants' attempts to collect from Ms. Newell goes directly to the core factual disputes in this case, which arise under the FDCPA and FCCPA.  "To prevail on a claim under the FDCPA, a plaintiff must prove that '(1) the plaintiff has been the object of a collection activity arising from a consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'"  *Quinn-Davis v. TrueAccord Corp.*, 2024 WL 4851344, *3 (S.D. Fla. Nov. 20, 2024).  Here, Ms. Newell alleges that Defendants engaged in several acts prohibited by the FDCPA including: continuing collection efforts after failing to provide verification of the debt in violation of 15 U.S.C. §1692g(b); continuing collection efforts after being notified in writing that Ms. Newell disputed the debt in violation 15 U.S.C.

11

§1692g(b); repeatedly calling or texting so frequently and at such times as to constitute harassment in violation of 15 U.S.C. §1692d; falsely representing the amount of the debt in violation of 15 U.S.C. §1692e(2)(a); and attempting to collect on an amount not expressly authorized by the agreement creating the debt in violation of 15 U.S.C. §1692f.

"Florida's FCCPA requires substantially the same elements to state a claim for relief as the federal FDCPA." *Quinn-Davis*, 2024 WL 4851344, at *3. However, the second prong is different in that the FCCPA prohibits acts of *persons*, not just debt collectors. *Ali v. LH All. Inc.*, No. 19-CV-61387, 2019 WL 3997124, *3 (S.D. Fla. Aug. 23, 2019). Ms. Newell alleges that Defendants violated the FCCPA by communicating with her directly to collect the debt after being told she was represented by a lawyer in violation of Florida Statute § 559.72(18); repeatedly calling or texting so frequently and at such times as to constitute harassment or abuse in violation of Florida Statute §559.72(7); attempting to collect on a debt knowing the debt is not legitimate (because it resulted from overbilling) in violation of Florida Statute § 559.72(9); and attempting to collect on the debt by sending communications between 9:00 P.M. and 8:00 A.M. without prior consent in violation of Florida Statute §559.72(17).

Records reflecting Defendants' communications with Ms. Newell—including the dates, times, frequency, and substance of those communications—would ordinarily constitute the primary evidence bearing on these issues. Defendants' failure to preserve and produce such records therefore substantially prejudices Ms. Newell's ability to prove her claims and to test Defendants' version of events.

Rule 37(b)(2)(A)(i) authorizes courts to direct that designated facts be taken as established when a party's discovery violations deprive the opposing party of evidence necessary to litigate

12

the case.  I find such a sanction warranted here.  Accordingly, for purposes of this action, I recommend that the following facts be taken as established:

1.  Defendants do not possess reliable business records documenting the dates, times, frequency, or manner of their communications with Ms. Newell regarding the alleged debt.

2.  Defendants cannot establish through contemporaneous records that their collection communications complied with the requirements of the FDCPA or the FCCPA.

### B. Failure to Produce Policies, Procedures, and Training Materials Concerning Compliance with the FDCPA and FCCPA

Next, Ms. Newell asserts that Defendants failed to produce any policies, procedures, or training materials concerning compliance with 15 U.S.C. § 1692 and Fla. Stat. § 559.72.

Travis Walker and the Law Firm deny possessing any such policies or procedures.  *See* DE 80-1, Resp. to RFP No. 6; DE 80-2, Resp. to RFP Nos. 6, 29.  Florida Legal Collections responded with an unsupported, boilerplate objection, asserting that production of policies, procedures, or training would be unduly burdensome because Lichter destroyed access to the information and Interpose required $20,000 to restore that access. See DE 80-9, Resp. to RFP Nos. 6, 20, 36. As discussed above, Defendants have provided no documentation substantiating these assertions and no evidence demonstrating a diligent effort to obtain the materials.

As a result, Defendants should not be permitted to rely on the bona fide error defense, as asserted in their First Affirmative Defense.  *See* DE 77 at 13.  To invoke that defense, a debt collector must demonstrate that it "actually employed or implement[ed] … procedures to avoid errors" and that those procedures were "reasonably adapted to avoid the specific error at issue." *Kottler v. Gulf Coast Collections Bureau, Inc.*, 847 F. App'x 542, 544 (11th Cir. 2021) (quoting *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1274 (11th Cir. 2011)).  Defendants have produced no policies, procedures, or training materials, nor any secondary evidence establishing their existence

13

or implementation. A party may not withhold discovery central to an affirmative defense and then rely on that same defense to avoid liability. *See* Fed. R. Civ. P. 37(c)(1). Defendants have failed to support the factual predicate necessary to assert a bona fide error defense by producing documentation establishing that they had procedures or policies in place to avoid violations. Accordingly, pursuant to Rule 37(c)(1), Defendants should be precluded from relying on that affirmative defense in this action.

## C. Failure to Produce Ms. Newell's Client File

Ms. Newell further contends that Defendants failed to produce the complete client file from her state court case. She specifically requested "the complete client file . . . including all pleadings, communications, notes, memos, research, investigations, reports, drafts, and exhibits," as well as "all documents reflecting efforts to transfer the client file," "any calendars, task lists, or docketing entries relating to Plaintiff's file," and "any correspondence with court personnel or opposing counsel in the underlying matter relevant to billed work." *See* DE 80-1, Request Nos. 1, 5, 21, 33. These requests should come as no surprise to Defendants since Mr. Bonan requested preservation of the case file as early as August 2023, DE 90-2, and, according to the Complaint, the state court ordered the Law Firm to transmit the case file to Mr. Bonan by January 29, 2024, DE 27 at ¶ 78.

In response, the Law Firm stated either that no responsive files existed or that it was "currently working with its tech support team" to collect responsive documents. DE 80-1, Resp. to Req. Nos. 1, 5, 21, 33. These responses were not supplemented or substantiated in any meaningful way prior to the close of discovery.

At the evidentiary hearing, Mr. Walker acknowledged that the client file should have been maintained in both hard copy and electronic form. He offered no explanation for the disappearance of these materials.

14

In November 2025—more than ten months after the federal litigation began—Mr. Walker emailed his IT vendor, Capstone, directing it to search for responsive documents. Limited materials were located and eventually produced. Ms. Newell's counsel acknowledges receipt of certain documents, including publicly available state court filings, the retainer agreement, some internal account notes, and one draft motion. However, no communications between the Law Firm and opposing counsel in the divorce case were produced, nor were calendars, docketing entries, transfer documentation, or other core components of a complete client file.

The record establishes that the client file should have existed, that Defendants were on notice of their duty to preserve it, and that significant portions are now unavailable without explanation. Defendants have offered no evidence demonstrating that the loss was inadvertent despite reasonable preservation efforts, nor have they shown that the failure to produce was substantially justified. I therefore find that Defendants' failure to preserve and produce Ms. Newell's complete client file reflects, at a minimum, willful disregard of their preservation and discovery obligations. The delay in initiating any meaningful search, the disappearance of both hard copy and electronic records after a preservation request was received, and the absence of competent evidence explaining the loss demonstrate conduct beyond mere negligence.

Ms. Newell has been prejudiced by the unavailability of the file, which goes directly to her claims that Defendants were attempting to collect unjustified amounts. *See, e.g.*, DE 27 at 15–16 ¶ 118, 17 ¶ 127. Accordingly, I conclude that sanctions are warranted. Pursuant to Rule 37(b)(2)(A) and Rule 37(c)(1), Defendants should be precluded from introducing any evidence concerning the contents of the missing client file beyond the documents already produced. Defendants should not be permitted to rely on unproduced communications, internal notes, or other materials allegedly contained within the file. Further, because Defendants have failed to produce

15

transfer documentation from the file as requested, Defendants should be precluded from claiming that they complied with all court orders and professional obligations regarding the transfer of the client file as they assert in their Fifth Affirmative Defense.

**D. Failure to Produce Person in Charge of Collections for Deposition and to Disclose Certain Key Witnesses in Initial Disclosures**

Ms. Newell next argues that Defendants failed to produce for deposition the individual most knowledgeable about collections at the Law Firm and Florida Legal Collections.  DE 65 at 3; DE 73 at 4; DE 90-1.   Instead, Defendants produced Travis Walker, who testified under oath that he was not the person in charge of collections for Florida Legal Collections and does not make collection phone calls for the Law Firm. DE 80-8 at 5; DE 80-7 at 9.  As a result, Ms. Newell was unable to obtain significant information concerning Defendants' collection processes, policies, procedures, and compliance practices because Travis Walker could not provide any of that information.  *See, e.g.*, 80-7 at 9 (Mr. Walker testifying that he does not know if the Law Firm sends texts messages, the number from which collection calls may come, or the full group of people who makes collection phone calls); DE 80-8 at 8 (Mr. Walker testifying that he does not remember whether FLC had authority to collect the debts at issue).

During his deposition and at the evidentiary hearing, Mr. Walker identified Angel Morales as the employee responsible for overseeing collections.  DE 80-8 at 5; DE 80-7 at 9.  Despite this testimony, Defendants neither produced Mr. Morales for deposition nor disclosed him as an individual likely to have discoverable information in their Rule 26 initial disclosures or interrogatory responses.   Defendants likewise failed to disclose Luke Carpentier, a former employee whose name appears on a collection letter sent to Ms. Newell, DE 80-4 at 2-3, and who therefore plainly possesses relevant knowledge regarding the collection activity at issue.

The duty to supplement disclosures under Rule 26(e) requires parties to timely identify individuals with discoverable information. Defendants' failure to disclose these witnesses deprived Ms. Newell of the opportunity to depose the individuals most knowledgeable about the very practices central to her claims. Because discovery has now closed, that opportunity cannot be restored without reopening the discovery period and disrupting the orderly progression of this case. I therefore find that Defendants violated their disclosure obligations, and that the violation was neither substantially justified nor harmless. See Fed. R. Civ. P. 37(c)(1).[3]

When a party fails to identify a witness as required by Rule 26, Rule 37(c)(1) provides that the party is not permitted to use that witness to supply evidence unless the failure was substantially justified or harmless. The rule "is a 'self-executing sanction for failure to make a disclosure,'" making it an "'effective enforcement' mechanism of the disclosure requirement when 'the party required to make the disclosure would need the material to support its own contentions." *Barron v. Fed. Rsrv. Bank of Atlanta*, 129 F. App'x 512, 520 (11th Cir. 2005) (citing Fed. R. Civ. P. 37, advisory committee's note (1993)). Given the importance of testimony from the individual responsible for collections—and Defendants' failure to disclose that individual despite possessing that knowledge—I conclude that exclusion is the appropriate remedy. Accordingly, I recommend that Defendants be precluded from calling Angel Morales or Luke Carpentier as witnesses,

---

[3] Defendants also argue it was improper for Ms. Newell to notice depositions for the "person in charge of collections" instead of noticing 30(b)(6) depositions for corporate representatives of the Law Firm and FLC, specifying topics for questioning. DE 87 at 3. The case Defendants cite, *Meraki Solar, LLC v. Rosenbalm*, contradicts this conclusion. The *Meraki* court explained that a party is not required to take a 30(b)(6) deposition, nor does the availability of 30(b)(6) depositions prohibit parties from deposing agents of a corporate entity to investigate their personal knowledge. 2021 WL 12286635, at *2 (N.D. Fla. Oct. 29, 2021). Further, by the text of Rule 30, Ms. Newell was permitted to notice a witness by role rather than by name. *See* Fed. R. Civ. P. 30(b)(1) "If the name is unknown, the notice must provide a general description sufficient to identify the person or the particular class or group to which the person belongs.").

whether at summary judgment, evidentiary hearing, or trial, except upon a showing of extraordinary circumstances.[4]

Ms. Newell also asserts that Defendants provided inaccurate contact information for certain disclosed witnesses by identifying Defendants' office as their location when those individuals were, in fact, former employees. The present record, however, does not demonstrate that Ms. Newell attempted to contact or depose these witnesses and was unable to do so because of the inaccurate information. Nor does the record show that Ms. Newell sought updated contact information during discovery. Absent a showing of resulting prejudice, sanctions are not warranted. See Fed. R. Civ. P. 37(c)(1). I therefore decline to recommend sanctions on this basis.

### E. Fees and Costs

Lastly, an award of fees and costs to Ms. Newell is warranted. Under Rule 37(b)(2)(C), when a party has failed to comply with a discovery order, "the court must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). As discussed above, I reject Defendants' arguments that their discovery misconduct was substantially justified. I also do not find any other circumstances that would make an award of expenses unjust. Therefore, Rule 37 requires me to order Defendants to pay the reasonable expenses caused by their discovery failures. In this case, those expenses should include the attorneys' fees Ms. Newell has incurred in its attempts to obtain the discovery it is due and in litigating this Motion. Upon consideration, drawing upon my own knowledge and

---

[4] I do not recommend re-opening discovery for the limited purpose of deposing these witnesses given the advanced posture of the case, which is now in the summary judgment phase, and Defendants' complete lack of justification for failing to disclose these witnesses. At this juncture, I believe exclusion of these witnesses better serves the interests of efficiency and fairness.

experience, I conclude that the amount of $5,000.00 serves as a fair amount to reimburse Ms. Newell for expenses reasonably incurred in pursuit of sanctions and the production of relevant information in discovery.

## **RECOMMENDATION**

Defendants have failed to comply with their discovery obligations and my prior Order, and sanctions are warranted.  Accordingly, I recommend that the Motion for Sanctions, DE 80, be **GRANTED IN PART AND DENIED IN PART**.  Specifically, I recommend that:

1. The following facts be taken as established:

    a. Defendants do not possess reliable business records documenting the dates, times, frequency, or manner of their communications with Ms. Newell regarding the alleged debt.

    b. Defendants cannot establish through contemporaneous records that their collection communications complied with the requirements of the FDCPA or the FCCPA.

2. Defendants be precluded from relying on the bona fide error defense as set forth in their First Affirmative Defense since they have not turned over any policies, procedures, or training manuals.

3. Defendants be precluded from introducing any evidence concerning the contents of the missing client file beyond the documents already produced.

4. Defendants be precluded from claiming that they transferred the client file in compliance with all court orders and professional obligations as set forth in their Fifth Affirmative Defense since they have not produced the entire client file or any transfer documentation.

5. Defendants be precluded from calling Angel Morales or Luke Carpentier as witnesses, whether at summary judgment, evidentiary hearing, or trial, except upon a showing of extraordinary circumstances.

6. Defendants be jointly and severally required to pay $5,000.00 to Ms. Newell.

## NOTICE OF RIGHT TO OBJECT
## AND SHORTENED OBJECTIONS PERIOD

Since summary judgment briefing is already underway in this case, I find it necessary and appropriate to shorten the time for any objections pursuant to Southern District of Florida Magistrate Judge Rule 4(a).  The parties shall have **seven calendar (7) days** from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District Judge Donald M. Middlebrooks.  Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).  **Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within three (3) days of the date of this Report and Recommendation.**

DONE AND ORDERED in Chambers at Fort Pierce, Florida, this 13th day of February, 2026.

SHANIEK MILLS MAYNARD
U.S. MAGISTRATE JUDGE

20